```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
UNITED STATES OF AMERICA,                                  :
                                                           :    MEMORANDUM & ORDER
           v.                                              :    22-CR-243 (WFK)
                                                           :
KAREEF MITCHELL,                                           :
                                                           :
                        Defendant.                         :
-----------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, United States District Judge:**
On February 15, 2024, Defendant pled guilty to Count One of a five-count Superseding Indictment in 22-CR-243,[1] charging him with Hobbs Act Robbery Conspiracy, in violation of 18 U.S.C. § 1951(a). Plea Agreement ¶ 1, ECF No. 91; Superseding Indictment ¶¶ 1, ECF No. 56. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to seventy months of incarceration, to run consecutively to his state sentence, to be followed by two years of supervised release with both special and standard conditions of supervision, excepting the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d); restitution in an amount to be determined; and payment of a mandatory special assessment of $100.00.

## I. BACKGROUND

*Months-Long Plan to Rob Jane Doe One and Jane Doe Two*

In late October 2020, co-defendants Romel Catoe and Matthew Sanchez began discussing the possibility of robbing Jane Doe One and Jane Doe Two. *See id.* ¶ 8–10. Catoe texted Sanchez to tell him he had learned from two co-conspirators where Jane Doe One and Jane Doe Two worked as dancers in Queens, New York. *Id.* ¶ 10. Catoe told Sanchez to bring his GPS so they could tag the victims' cars and "find out where they live." *Id.* ¶ 9. Between October 2020 and the first robbery on January 27, 2021, Catoe and Sanchez attached GPS tracking devices to Jane Doe

---

[1] All docket citations and references to "Counts" of convictions refer to 22-CR-243 as to Defendant Kareef Mitchell unless otherwise stated.

1

One's and Jane Doe Two's cars. *Id.* ¶ 10. Catoe and Sanchez regularly visited both the victims' residences and workplaces in the weeks leading up to the first robbery. *Id.* Catoe and Sanchez also exchanged text messages discussing the use of firearms and recognizing Jane Doe One had young children who might be at home during a robbery. *Id.* ¶ 11, 14–17. Regarding the issue of Jane Doe One's children, Catoe wrote "idc [I don't care]," and Sanchez replied, "Me either." *Id.*

*Robbery on January 27, 2021*

In the early morning of January 27, 2021, Catoe and Sanchez broke into Jane Doe One's residence. *Id.* ¶ 6. Jane Doe One was not home, but her partner and young children were. *Id.* Catoe and Sanchez zip-tied Jane Doe One's partner in the bathroom, put a gun to his head, and demanded money and property. *Id.* Catoe and Sanchez stole cash proceeds of Jane Doe One's and Jane Doe Two's work, as well as luxury handbags. *Id.* Authorities have not recovered the cash taken by Catoe and Sanchez. *Id.*

*Disposition of Stolen Cash and Sales of Stolen Goods*

After the January 27, 2021, robbery, Catoe brought the stolen cash to Philadelphia, Pennsylvania. *Id.* ¶ 13. In the days following the robbery, Catoe and his girlfriend deposited cash in the amounts of $600.00, $97.00, $2,000.00, $2,006.00, and $5,007.00 into her bank account. *Id.*

On January 29, 2021, Sanchez sent Catoe photos of seven luxury handbags, writing "2 being sold" and that someone "might have all em sold for a higher price for us." *Id.* ¶ 12.

*Attempted Robbery on February 5, 2021*

In the early morning of February 5, 2021, Defendant and Catoe broke into Jane Doe One's residence for a second time. *Id.* ¶ 7. Catoe broke in, and Defendant followed shortly thereafter, while Sanchez worked as the getaway driver during this second robbery. **Sealed** Addendum to

Presentence Investigation Report ¶ 7 ("Sealed PSR Addendum"), ECF No. 140; *id.* Jane Doe One, her partner, their two children, and two of the couple's friends were home. Sealed PSR ¶ 7. Catoe ordered Jane Doe One and her partner to the bathroom, where he zip-tied them. *Id.* Catoe also pointed his weapon at the two young children. *Id.* While Catoe and Defendant searched the house, one of the children called the police. *Id.* After NYPD officers arrived, Catoe and Defendant fled. *Id.* They left behind a Daisy Air Rifle BB gun and Catoe's cell phone. *Id.* Authorities did not recover any other firearms from the scene. *Id.*

### *Procedural History*

On June 12, 2023, a grand jury returned a five-count Superseding Indictment against Defendant, Catoe, and Sanchez. Superseding Indictment ¶¶ 1–9. On July 10, 2023, Defendant was writted into federal custody from a New York State prison, where he was serving a sentence for an unrelated, prior felony offense. Sealed PSR ¶ 23. On February 15, 2024, Defendant pled guilty to Count One of the Superseding Indictment, charging him with Hobbs Act Robbery Conspiracy, in violation of 18 U.S.C. § 1951(a). Plea Agreement ¶ 1. Defendant agreed not to file an appeal or otherwise challenge his sentence if the Court imposed a term of imprisonment for the Indictment charges of 87 months or below. *Id.* ¶ 4.

On January 22, 2024, co-defendant Catoe pled guilty to one count of Hobbs Act Robbery and one count of Attempted Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a). Plea Agreement as to Romel Catoe in 22-CR-243 (S-1), ECF No. 91. On January 10, 2025, the Court sentenced Catoe to 120 months' incarceration on each count, to run concurrently, followed by two years of supervised release on each count, with both standard and special conditions.

On January 29, 2024, co-defendant Sanchez pled guilty to one count of Hobbs Act Robbery and one count of Attempted Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a). Plea

3

Agreement as to Matthew Sanchez in 22-CR-243 (S-1), ECF No. 87. Sanchez will come before the Court for sentencing on April 9, 2025.

## II. LEGAL STANDARD

Congress set forth the procedures for imposing a sentence in a criminal case in 18 U.S.C. § 3553. Together with 18 U.S.C. § 3553, the United States Federal Sentencing Guidelines operate as the "starting point and the initial benchmark" for a court evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.* The court's statement of reasons "shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal citation omitted).

When determining the appropriate sentence, the court must consider seven different factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentence range established by the Guidelines; (5) any pertinent policy statements issued by the United States Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among similar defendants found guilty of similar conduct; and (7) the need to provide restitution to victims of the offense. *See* 18 U.S.C. § 3553(a). The Court now addresses each factor.

## III. ANALYSIS

### A. The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

#### 1. *Family and Personal Background*

Defendant was born on November 5, 1994, in Brooklyn, New York. **Sealed** PSR ¶ 69. Defendant's parents are married. *Id.* His father was recently incarcerated with a conditional release date of February 2025. *Id.* Defendant reports having a cordial relationship with his father; he recalls his father being intermittently absent during his childhood for reasons unknown to Defendant. *Id.* Defendant's mother and siblings are aware of the instant offense and remain supportive. *Id.* ¶¶ 69–71. Defendant had an average childhood in a loving home free of abuse or neglect, though the suicide of his cousin when he was a teenager was reportedly difficult for him. *Id.* ¶ 70.

Defendant has neither married nor had any children. *Id.* ¶ 76. He is currently in a relationship. *Id.*

#### 2. *Educational and Employment History*

Defendant earned his high school diploma in 2014 from Progress High School for Professional Careers in Brooklyn. *Id.* ¶ 90. Defendant attended college at SUNY Broome Community College in Binghamton, New York, but he withdrew after two semesters. *Id.* ¶ 92. In 2017, Defendant enrolled at Finger Lake Community College in Canandaigua, New York, to study culinary arts. *Id.* ¶ 93. He stayed for only one semester, leaving to support his then-girlfriend, who was pregnant. *Id.* A DNA test later revealed Defendant was not the father of the child, a revelation that "deeply affected him and left him feeling inadequate." *Id.*

5

Defendant's first job was as a part-time cashier at Fairway Supermarket in Brooklyn, New York, from 2013 to 2014. *Id.* ¶ 102. From 2015 to 2017, Defendant worked as a part-time food server at Hale & Hearty. *Id.* ¶ 101. From 2017 to 2018, Defendant worked as a part-time food server at Walmart in Canandaigua, New York. *Id.* ¶ 100. From 2019 to 2020, Defendant worked as a part-time driver for UPS. *Id.* ¶ 99. For less than three months in 2020, Defendant worked at a tire company in Flushing, New York. *Id.* ¶ 98.

Defendant was unemployed during the COVID-19 pandemic and earned money by helping others apply for unemployment benefits. *Id.* ¶ 97. He was hired to work at an Amazon warehouse on Staten Island in 2021, but was furloughed following New York's enactment of the COVID-19 vaccine mandate. *Id.*

Defendant has been in custody at the Metropolitan Detention Center ("MDC") in Brooklyn, New York, since July 10, 2023. *Id.* ¶ 80. While incarcerated, Defendant has worked as a unit orderly and taken numerous classes. *Id.* He has also tutored other inmates and organized a book group. *Id.* ¶ 95; Def. Sentencing Mem. at 10.

### 3.   *Prior Convictions*

In addition to the conduct charged in the instant case, Defendant has one prior conviction. In 2019, at age 24, Defendant was arrested for criminal sale of a controlled substance (second degree) and criminal sale of a firearm. **Sealed** PSR ¶ 61.

### 4.   *Physical and Mental Health*

Defendant has asthma and reports having been diagnosed with certain heart conditions but is otherwise in good health. *Id.* ¶¶ 82–83. Defendant has expressed a desire to receive mental health treatment following his release, as he witnessed stabbings and other violent or inappropriate incidents while in custody at the MDC. *Id.* ¶¶ 84–86.

5.  *Substance Abuse*

Defendant has used marijuana, cocaine, and heroin. *Id.* ¶¶ 87–89. He drank, and possibly abused, alcohol before his arrest. *Id.* ¶ 88; Def. Sentencing Mem at 8, 14. While Defendant reported to Probation only drinking socially on weekends, defense counsel described Defendant as suffering from alcohol addiction or dependence at the time of the instant offense. Sealed PSR ¶ 88; Def. Sentencing Mem. at 15–16. Defense counsel states Defendant "quit using alcohol, heroin, and cocaine" by the time he entered state custody. Def. Sentencing Mem. at 16.

6.  *Nature and Circumstances of the Offense*

The Court's previous statements address the nature and circumstances surrounding the instant offense. *See supra* Part I.

**B.   The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense, which involved aiding in the attempted robbery of a woman while her minor children were present. *See* Ex. A to Gov't Sentencing Mem. at 1 (Victim Impact Statement). The Court's sentence will deter others from engaging in similar acts and justly punish Defendant for his crimes. Indeed, the Court's sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in this factor. 18 U.S.C. § 3553(a).

### C.     The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to one count of Hobbs Act Robbery Conspiracy in violation of 18 U.S.C. § 1951(a). Plea Agreement ¶ 1. Defendant faces a maximum term of imprisonment of twenty years and no minimum term. 18 U.S.C. § 1951(a). Defendant also faces a maximum term of supervised release of three years. 18 U.S.C. § 3583(b)(2). If a condition of release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(b) and (e). Defendant also faces a statutory term of probation between one and five years, and one of the following conditions must be imposed in the absence of extraordinary circumstances: a fine, restitution, or community service. 18 U.S.C. § 3561(a)(3). However, under the Guidelines provision at U.S.S.G. §5B1.1(b)(2)-(3), Defendant is ineligible for probation.

In addition to the foregoing, Defendant faces a maximum fine of $250,000.00 pursuant to 18 U.S.C. § 3571(b)(3). However, Defendant appears unable to pay a fine. **Sealed** PSR ¶ 109. Defendant also faces mandatory restitution in this case pursuant to 18 U.S.C. § 3663A. However, the final amount of restitution is unknown at this time. *Id.* ¶ 120. Per guidance from *United States v. Catoggio*, 326 F.3d 323, 328 (2d Cir. 2003), the Court should not order restitution when losses incurred by the victim are not identified. The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within ninety days after this sentencing to determine the specific amounts owed to Defendant's victims. Finally, the Court is required to impose a mandatory special assessment of $100.00, pursuant to 18 U.S.C. § 3013(a)(2)(A).

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . [t]he applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A). The applicable Guidelines provision for violations of 18 U.S.C. § 1951(a) is U.S.S.G. § 2B3.1. This provision provides for a base offense level of 20.

All parties agree certain enhancements apply. Four levels are added under U.S.S.G. §2B3.1(b)(2)(A) for Defendant's use of a dangerous weapon to threaten Jane Doe One and her minor children. Gov't Sentencing Mem. at 3; Def. Sentencing Mem. at 11. Two levels are added under U.S.S.G. §2B3.1(b)(4)(B) for physically restraining others to facilitate the commission of the offense. Here, Defendant's co-defendant used zip ties to restrain the victims. *Id.* Two levels are also added under U.S.S.G. §3A1.1(b) because Defendant knew or should have known a victim of the offense was a vulnerable victim. Indeed, Defendant's co-defendants acknowledged Jane Doe One's minor children could be home before the attempted robbery in February 2021. *See* Sealed PSR ¶ 11; Gov't Sentencing Mem. at 3. And while Defendant claims he did not know about the children ahead of time, he was aware of their presence once inside the home. *See* Ex. B to Def. Sentencing Mem. at 2; *see also United States v. Chubalashvili*, 17-CR-709, 2023 WL 583119, at *5 (E.D.N.Y. Sept. 8, 2023) (Kuntz, J.) (applying the vulnerable victim enhancement where the defendant pointed his weapon at a minor during a Hobbs Act robbery).

All parties also agree certain reductions to Defendant's total offense level apply, including a two-level reduction under U.S.S.G. §3E1.1 (Acceptance of Responsibility) and a one-level reduction under U.S.S.G. §3E1.1(b) (timely notice to the Government of Defendant's

intention to enter a guilty plea). *See* Plea Agreement ¶ 2; Gov't Sentencing Mem. at 3; Def. Sentencing Mem. at 11. The Government and Defendant agreed to an additional one-level reduction under the public policy goals enunciated in U.S.S.G. §5K2.0. *See* Gov't Sentencing Mem. at 3; Def. Sentencing Mem. at 11. These reductions result in a total adjusted offense level of 24 and a Guidelines range of fifty-seven to seventy-one months' imprisonment.

Probation recommends a bottom-of-the-Guidelines sentence of fifty-seven months' imprisonment; two years of supervised release with special conditions; and payment of the mandatory one-hundred dollar ($100.00) special assessment. U.S. Probation Dep't Recommendation at 1, ECF No. 102-1. Defense counsel requests a below-Guidelines sentence of thirty months' imprisonment, to run concurrently with the remainder of Defendant's state sentence. Def. Sentencing Mem. at 3, 22. The Government recommends a Guidelines sentence of between fifty-seven and seventy-one months' imprisonment, to run consecutively to Defendant's state sentence. Gov't Sentencing Mem. at 1, 3. This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

The parties have not drawn the Court's attention to any applicable policy statements. Finding no others on its own, the Court proceeds to the next § 3553(a) factor.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The parties have not raised arguments regarding unwarranted sentencing disparities in this case. For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

Restitution is mandatory in this case pursuant to 18 U.S.C. § 3663A. The Court reserves its right pursuant to 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within ninety days after this sentencing to determine the specific amounts owed to Defendant's victims.

## IV. CONCLUSION

For the reasons set forth above, the Court sentences Defendant to seventy months of custody, to run consecutively to his state sentence; two years of supervised release with both the standard and special conditions of supervised release; restitution in an amount to be determined; and the mandatory $100.00 special assessment. This sentence is sufficient but no greater than necessary to accomplish the purposes of § 3553(a)(2). The Court does not impose a fine given Defendant's apparent inability to pay. The Court excuses Defendant from the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d).

The Court expressly adopts the factual findings of the **Sealed** Presentence Investigation Report and the **Sealed** Addendums thereto, as corrected herein, to the extent those findings are not inconsistent with this opinion.

SO ORDERED.

s/ WFK
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: March 13, 2025
      Brooklyn, New York